**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge R. Brooke Jackson**

Civil Action No. 21-cv-00695-RBJ

OMAR RICARDO GODINEZ,

     Applicant,

v.

DEAN WILLIAMS, Executive Director, Colorado Department of Corrections,
TERRY JAQUES, Warden, Limon Correctional Facility, and
PHIL WEISER, Attorney General, State of Colorado,

     Respondents.

---

## ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

---

**R. Brooke Jackson, District Judge.**

     Applicant Omar Ricardo Godinez is a prisoner in the custody of the Colorado

Department of Corrections ("CDOC").  Applicant has filed, through counsel, an

Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) ("the

Application"), challenging the validity of his sentence in Arapahoe County District Court

case number 2011CR2537.  On May 28, 2021, Respondents filed an Answer to the

Application for Writ of Habeas Corpus. (ECF No. 21).  Mr. Godinez filed a Reply on July

21, 2021. (ECF No. 24).  Mr. Godinez has also filed a Motion for Discovery and to

Expand the Record. (ECF No. 27).

     After reviewing the record before the Court, including the Application, the

Answer, the Reply, and the state court record, the Court FINDS and CONCLUDES that

the Application should be denied and the case dismissed with prejudice.

1

Additionally, Mr. Godinez's Motion for Discovery and to Expand the Record (ECF No. 27) will also be denied. Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Pursuant to Rule 6(b), "[a] party requesting discovery must provide reasons for the request." As discussed below, the Court has determined that the Application can be resolved based on the existing record, so additional discovery is not warranted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2014, Mr. Godinez was convicted by a jury of multiple offenses, including two counts of second degree kidnapping, two counts of sexual assault, and two counts of conspiracy to commit sexual assault. (ECF No. 1 at 4); *see also* State Court Record, Court File at 963. At the time he committed the offenses, Mr. Godinez was 15 years old. The Colorado Court of Appeals summarized the relevant factual background of Applicant's criminal case as follows:

> In 2011, a male approached the victim, S.R., from behind, held a gun to her head, and forced her into an SUV with three other male occupants. They drove her to a house, walked her through the kitchen, directed her downstairs to a basement bedroom, and told her to remove her clothes. She pleaded with them to use a condom, so one of the males left to buy condoms. They then took turns sexually assaulting her.
>
> . . .
>
> A similar incident occurred the next month. The second victim, fifteen year-old A.H., said a male grabbed her from behind as she walked down the street and told her not to scream. He then forced her into a gold SUV containing

2

> other males.  She believed the male who abducted her was
> approximately her age.  . . . They drove her to a house, took
> her into a basement bedroom, and told her that they "had to
> rape her," which they then did.

*People v. Godinez*, 457 P.3d 77, 82 (Colo. Ct. App. 2018), (ECF No. 1-1 at 7).  Mr.

Godinez, who was tried as an adult, was sentenced under Colorado's Sex Offender

Lifetime Supervision Act ("SOLSA").  He was sentenced to consecutive and concurrent

terms, totaling an aggregate indeterminate sentence of "32 years to life." *Id.* at 81; (ECF

No. 1-1 at 6).

After sentencing, the state district court held a multi-day hearing to consider

numerous arguments related to Applicant's sentence, including Applicant's argument

that the sentence was unconstitutional under *Graham v. Florida*, 560 U.S. 48 (2010).

*See* State Court Record, Court Transcripts of Evidentiary Hearing Feb. 25, Feb. 26, and

March 11, 2014.  In *Graham*, the United States Supreme Court held that the Eighth

Amendment prohibits the imposition of a life-without-parole sentence on a juvenile

offender for a non-homicide offense. *Graham*, 560 U.S. at 82.  The Supreme Court

stated that juvenile offenders must be given "some meaningful opportunity to obtain

release based on demonstrated maturity and rehabilitation." *Id.* at 75.

During the evidentiary hearing, Applicant argued that his indeterminate sentence

was unconstitutional as applied to juveniles based on *Graham*.  First, he argued that his

sentence was unconstitutional under *Graham* because the parole board was not

allowed to consider his maturity and rehabilitation.  He further argued that even if his

sentence would technically allow him to reach parole eligibility during his lifetime, his

chance of actually being paroled once eligible would be insufficiently meaningful under

*Graham* because under state law he cannot be paroled until he has progressed in a Sex

Offender Treatment and Monitoring Program ("SOTMP" ), which is approved by the

Colorado Sex Offender Management Board ("SOMB"), but there is no guarantee he will

be allowed to participate in the treatment program because of waitlists and other

administrative issues.

Following the evidentiary hearing, the state district court issued a lengthy written

order denying Applicant's challenges to his sentence. *See* Order – Re: Defendant's

Motions Challenging the Constitutionality of His Sentence, 2011 CR 2537 (Arapahoe

County D. Ct. Mar. 21, 2014) at State Court Record, Court File at 963-89.  As to the

constitutionality of Applicant's indeterminate sentence, the Court found and concluded

that: (1) under state law, Mr. Godinez will be approximately 38 years old when he is first

eligible for parole (*id.* at 964 & 975); (2) the defendant's anticipated life span (which was

reduced based on long incarceration in the CDOC) is 69.68 years (*id.* at 975); (3) under

state law, the parole board *may* consider Mr. Godinez's maturity and rehabilitation and

given the *Graham* mandate, the Court presumes that the parole board will consider

such factors (*id.* at 980); (4) the Court must rely on both the statutory requirement for

SOMB-approved treatment and the SOMB standards and guidelines, which anticipate

that such treatment "can, will and must be provided to incarcerated sex offenders" (*id.* at

982); (5) CDOC's practice of deferring SOMB-approved treatment to the last four years

prior to release on parole does not jeopardize the defendant's eligibility for parole or the

effectiveness of the treatment – there was expert testimony to the effect that treatment

is most effective when provided shortly before release and that age does not

significantly affect treatment efficacy (*id.*); and (6) when Mr. Godinez is eligible for

4

SOMB-approved treatment, he will no longer be a juvenile, so he will not need juvenile-certified treatment providers (*id.*).

On direct appeal, Applicant asserted numerous claims, including arguing that his sentence was unconstitutional based on *Graham*.  The Colorado Court of Appeals ("CCA") affirmed Applicant's conviction and sentence on December 13, 2018. *People v. Godinez*, 457 P.3d 77 (Colo. Ct. App. 2018), (ECF No. 1-1).  The CCA upheld his indeterminate sentence on a different basis than the district court because by the time the CCA issued its opinion, the Colorado Supreme Court had ruled that *Graham* did not apply to aggregate sentences consisting of consecutive terms for multiple crimes. *See id.* at 95 (citing *Lucero v. People*, 394 P.3d 1128 (Colo. 2017), and *Estrada-Huerta v. People*, 394 P.3d 1139 (Colo. 2017)).  Applicant filed a petition for a writ of certiorari to the Colorado Supreme Court, but it was denied. (ECF No. ECF No. 1-5).  Applicant did not file a petition for a writ of certiorari with the United States Supreme Court. (*See* ECF No. 1 at 7).

Mr. Godinez filed, through counsel, his § 2254 Application in this Court on March 8, 2021. (ECF No. 1).  He asserts a single claim, titled: "Mr. Godinez's mandatory indeterminate sentence of 32-years to life for offenses committed when he was only fifteen violates the Eighth Amendment." (*Id.* at 2).  Respondents concede that the Application is timely, and that Mr. Godinez exhausted his state court remedies. (ECF No. 8).

## II. STANDARDS OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless

5

the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Godinez bears the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*  When the last state court decision on the merits "does not come accompanied with those reasons, . . . the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Godinez seeks to apply a rule of law that was clearly established by the Supreme Court at the time the state court adjudicated the claim on its merits. *Greene v. Fisher*, 565 U.S. 34, 38 (2011).  Clearly established federal law "refers to the holdings, as opposed

to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Furthermore,

> clearly established law consists of Supreme Court holdings
> in cases where the facts are at least closely-related or
> similar to the case *sub judice*. Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established

federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at

1018.

If a clearly established rule of federal law is implicated, the Court must determine

whether the state court's decision was contrary to or an unreasonable application of that

clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established
> federal law if: (a) "the state court applies a rule that
> contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The
> word 'contrary' is commonly understood to mean
> 'diametrically different,' 'opposite in character or nature,' or
> 'mutually opposed.'" *Williams*, 529 U.S. at 405, 120 S. Ct.
> 1495 (citation omitted).
>
> A state court decision involves an unreasonable application
> of clearly established federal law when it identifies the
> correct governing legal rule from Supreme Court cases, but
> unreasonably applies it to the facts. *Id*. at 407-08, 120 S. Ct.
> 1495.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411.  A decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted). Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted, brackets in original).  In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102.  In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Mr. Godinez bears the burden of rebutting the presumption by clear and convincing evidence. The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017).

Finally, the Court's analysis is not complete even if Applicant demonstrates the state court decision is contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019), *cert. denied*, 141 S. Ct. 294 (2020). If the requisite showing under § 2254(d) is made, the Court must consider the merits of the constitutional claim *de novo*. *See id.* at 1056-57.

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See id.* at 1057.  However, even if a claim is not adjudicated on the merits in state court, the Court still must presume the state court's factual findings pertinent to the claim are correct under § 2254(e). *See id.*

## III.  DISCUSSION

### A.  Clearly Established Federal Law

The parties agree that the primary source of the relevant clearly established federal law for Mr. Godinez's habeas claim is the Supreme Court's decision in *Graham*. In *Graham*, as noted above, the Supreme Court held that the Eighth Amendment is violated when a juvenile offender who did not commit a homicide offense is sentenced to life in prison without a meaningful opportunity for release. *Graham*, 560 U.S. at 82. More specifically, the Supreme Court held:

> The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.  A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.

*Id.*  The Court reasoned that juveniles are different from adults in that they have an "underdeveloped sense of responsibility;" they "are more vulnerable ... to negative influences and outside pressures;" and they are more amenable to rehabilitation. *Id.* at 68.

In addition, for the purposes of the Court's analysis under § 2254(d)(1), this Court is bound by the decision of the United States Court of Appeals for the Tenth Circuit in

*Budder v. Addison*, 851 F.3d 1047 (10th Cir. 2017), which addressed the scope of the

clearly established federal law in *Graham* as follows:

> We conclude, first, that the "sentencing practice" considered
> by the Court [in *Graham*] includes any sentence that would
> deny the offender a realistic opportunity for release in the
> offender's lifetime; second, that the Court's analysis
> regarding "the nature of the offense" applies to all
> nonhomicide offenses, regardless of the number or severity
> of those offenses; and, third, that the Court's analysis
> regarding "the characteristics of the offender" applies to any
> offender who was under the age of eighteen at the time of
> his or her offense.

*Id.* at 1055.  Further, in *Budder*, the Tenth Circuit held that *Graham*'s categorical rule

"must be read to apply to all sentences that are of such length that they would remove

any possibility of eventual release ... whether or not that sentence bears the specific

label 'life without parole.'"  at 1057.  Thus, it is clearly established federal law in our

Circuit that the rule in *Graham* applies not only to a sentence of life without parole for a

single offense by a juvenile, but also to consecutive term-of-years sentences for multiple

offenses. *Id.* at 1058.  Applying this clearly established federal law, the Tenth Circuit in

*Budder* held that a juvenile offender's consecutive sentences that would lead to parole

eligibility only after serving more than 131 years violated the Eighth Amendment. *Id.* at

1059.

    As noted above, Mr. Godinez was sentenced to an aggregate term of

imprisonment of 32 years to life.  The Colorado Court of Appeals rejected Applicant's

"virtual life sentence" argument because the Colorado Supreme Court had rejected the

same or a similar argument regarding aggregate sentences in *Lucero v. People*, 394

P.3d 1128 (Colo. 2017).  Specifically, the Colorado Court of Appeals in *Godinez* stated:

11

We reject [Mr. Godinez's] arguments because the Colorado Supreme Court has rejected the same or a similar argument in *Lucero v. People*, 2017 CO 49, 394 P.3d 1128, and we are bound by supreme court precedents.

A. Standard of Review and Applicable Law

We review the constitutionality of a sentence de novo. *Id.* at ¶ 13. We presume the legislature follows constitutional standards when enacting a statute. *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 440 (Colo. 2000). The defendant has a heavy burden to prove a statute's unconstitutionality. *People v. Allman*, 2012 COA 212, ¶ 7, 321 P.3d 557.

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. *Roper*, *Graham*, *Miller*, and *Montgomery v. Louisiana*, 577 U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), recognize that children are fundamentally different from adults. "[F]or a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole" because it constitutes cruel and unusual punishment. *Graham*, 560 U.S. at 74, 130 S.Ct. 2011. However, "while states must 'give defendants ... some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,' the Eighth Amendment 'does not require [a] State to release [a juvenile] offender during his natural life' or to 'guarantee eventual freedom.'" *Lucero*, ¶ 17 (quoting *Graham*, 560 U.S. at 75, 130 S.Ct. 2011).

*Graham* and *Miller* did not consider aggregate terms-of-years sentences, but our supreme court did in *Lucero*. It held that *Graham* and *Miller* only apply when a juvenile is sentenced to the specific sentence of life without the possibility of parole for a single offense. *Id.* at ¶ 15. The court later applied its holding to affirm a juvenile-defendant's aggregate sentences in a sexual assault case. *See Estrada-Huerta v. People*, 2017 CO 52, ¶ 8, 394 P.3d 1139.

B. Application

Godinez was convicted of multiple offenses for which he was sentenced to imprisonment for thirty-two years to life. The

> parties agree that Godinez will be eligible for his first parole hearing in thirty-two years.
>
> The thrust of Godinez's contention is that his aggregate sentence is the functional equivalent of a life without parole sentence, which violates *Graham* and *Miller*. But *Lucero* explicitly rejected this "functional equivalent" argument. *Lucero*, ¶¶ 22, 24.
>
> Here, like in *Lucero*, Godinez was sentenced to a term of years with the possibility of parole for multiple crimes, rather than a life without parole sentence for a single crime, as prohibited under the supreme court's reading of *Graham* and *Miller* in *Lucero*.
>
> Unlike Godinez, the defendant in *Lucero* was not subject to the Colorado Sex Offender Lifetime Supervision Act of 1998 or the sex offender treatment statute. However, the supreme court explicitly extended its reasoning in *Lucero* to a juvenile-defendant's sexual assault conviction in a companion case. *Estrada-Huerta*, ¶ 8.
>
> Godinez has not shown how his aggregate sentence escapes the holdings of *Lucero* and *Estrada-Huerta*. Therefore, we reject his unconstitutional as-applied challenge and affirm his sentences.

*Godinez*, 457 P.3d at 94-95, (ECF No. 1-1 at 17-18).

Respondents concede that based on the Tenth Circuit's decision in *Budder*, the CCA's decision that *Graham* does not apply to Mr. Godinez because he received an aggregate term-of-years sentence is contrary to clearly established federal law under *Graham*. (*See* ECF No. 21 at 23).  Thus, it is undisputed that the CCA's decision in *Godinez* was contrary to the clearly established law of *Graham* and, therefore, § 2254(d) does not bar relief.

Although § 2254(d) does not prevent habeas relief, the Court must now review the constitutional issue *de novo* to determine if Mr. Godinez's sentence complies with the clearly established law of *Graham*.

### B. De Novo Review

Mr. Godinez argues that Colorado's mandatory sentencing scheme and parole system, as applied to him -- a fifteen-year-old nonhomicide offender subjected to direct filing and sentenced to an indeterminate term under the state's sex offender statutes -- violate the Eighth Amendment and the requirements of *Graham*. (ECF No. 1 at 9). Mr. Godinez initially notes that he was subject to Colorado's direct filing statute, Colo. Rev. Stat. § 19-2-517 (2010), and "was prosecuted and sentenced as an adult purely as a matter of prosecutorial discretion with no hearing, no findings, and no opportunity for judicial review." (ECF No. 1 at 12).

The fact that Mr. Godinez was prosecuted and convicted as an adult of a sexual offense resulted in him being sentenced under Colorado's SOLSA sentencing scheme. Mr. Godinez notes that sentencing under SOLSA "'marches to the beat of its own drum'" and that parole eligibility under SOLSA is a "'horse of a different color.'" (ECF No. 24 at 4 (citations omitted)). Specifically, Mr. Godinez explains:

> The critical distinctions between SOLSA and Colorado's general sentencing and parole scheme demonstrate the harsh reality of Godinez's situation – that, regardless of how much earned time (or good time), he will not become eligible for the state's general parole program unless and until he first passes through the eye of the § 18-1.3-1006(1)(a) needle. To do so, he must convince the executive parole board that he "has successfully progressed in treatment and would not pose an undue threat to the community if released under appropriate treatment and monitoring requirements," and that "there is a strong and reasonable probability" that

14

he "will not thereafter violate the law." § 18-1.3-1006(1)(a);
*see also Manaois*, ¶ 43.

Colorado's general sentencing statutes do not similarly
condition parole eligibility on successful progression in sex-
offense-specific treatment. *Manaois*, ¶ 51.  What this means
is that if the CDOC continues to delay Godinez's treatment
for decades and then, for whatever reason (e.g. lack of
availability, resources, staff, fiscal considerations or
otherwise) simply doesn't provide that treatment, then
Godinez isn't eligible for parole or to even be considered for
it under the general parole statutes. Not at age 38.  Not by
age 47.  Not geriatric parole.  Not ever. Compare *Rainer*,
952 F.3d at 1210.

The same is true even if CDOC does eventually provide
Godinez adult treatment decades from now, but he doesn't
"successfully progress" under adult standards or,
alternatively, that he doesn't meet discretionary risk
assessment, then he will never be released to parole . . . .

(ECF No. 24 at 5).  Mr. Godinez also argues that *even if* he is released on parole, the

mandatory parole requirements under SOLSA mean that his "sentence to incarceration

(with a maximum component of life) continues until the parole board discharges him, if

ever." (ECF No. 1 at 18 (citing *People v. Back*, 2013 COA 114, ¶ 28, citing § 18-1.3-

1006(1)(b)).

### 1. Direct Filing Statute and Post-Incarceration Parole and Registration Requirements

Although not the central issues in his habeas application, Mr. Godinez makes

arguments regarding Colorado's direct filing statute and the fact that if he is released on

parole, he will face a lifetime of registering as a sex offender and may face a lifetime on

parole. (ECF No. 1 at 18-19).  The Respondents did not respond to these specific

issues in their Answer. (*See* ECF No. 21).

First, Mr. Godinez argues that being subject to the direct filing statute, without the opportunity for a reverse transfer hearing, deprived him of the procedures purposely implemented by Colorado's General Assembly to comply with *Graham* and the neuroscience and social science of juveniles underlying that decision. (ECF No. 1 at 11 & 19).  The Colorado General Assembly amended the direct filing statute in 2012 and repealed a portion of the transfer statute. (ECF No. 1 at 12 (citing 2012 Sess. Laws, Ch.. 128, sec. 1)).  The 2012 changes "increased the threshold age requirement for direct filing from fourteen to sixteen, abolished direct filing against children younger than sixteen, and authorized all juveniles charged by direct filing to file a motion seeking transfer to juvenile court" (*Id.* (citing §19-2-517(3)(a))).  However, the Colorado courts determined that the amended 2012 statute did not apply retroactively to Mr. Godinez. Mr. Godinez also argues that based on the direct filing system in Colorado, he was deprived of an opportunity to establish "any objective baseline assessment of his maturity of potential for rehabilitation near the time of the offenses." (ECF No. 1 at 16).

It is undisputed that Mr. Godinez was subject to direct filing as an adult, and he was prosecuted and sentenced as an adult for crimes that he committed when he was 15 years old.  However, Mr. Godinez fails to demonstrate that such system violates his constitutional rights.  In most cases, the question of whether a defendant is to be charged as an adult criminal or a juvenile delinquent is one of prosecutorial discretion devoid of most due process guarantees. *Steele v. Withrow,* 157 F.Supp.2d 734, 740-41 (E.D. Mich. 2001) (citing *Stokes v. Fair,* 581 F.2d 287, 289 (1st Cir.1978)); *see Alvarado v. Hill,* 252 F.3d 1066, 1068–69 (9th Cir. 2001) (noting that a state court's determination that state law mandating that juveniles between ages of 15 and 17 charged with

16

commission of specified crimes be tried and sentenced as adults did not violate due process and was not contrary to or unreasonable application of clearly established federal law).  In *Kent v. United States,* 383 U.S. 541, 556-61 (1966), the Supreme Court addressed the due process rights of a juvenile transferred from juvenile court without a hearing where the statutory scheme provided that exclusive jurisdiction was vested in the juvenile court. The Supreme Court held that a juvenile "by statute entitled to certain procedures and benefits as a consequence of his *statutory* right to the 'exclusive' jurisdiction of the juvenile court .... [is therefore] entitled to a hearing." *Id.* at 557 (emphasis added).  In other words, juveniles have a due process right to any "procedures and benefits" granted to them by state statute, but do not have an absolute constitutional right to any specific set of "procedures and benefits."  In this case, under Colorado's direct filing statute in place at the time Mr. Godinez was charged, he was not entitled to any "procedures and benefits" based on his age.  As a result, Mr. Godinez's constitutional rights were not violated when he was prosecuted and sentenced as an adult for crimes that he committed when he was fifteen years old.  Therefore, to the extent Mr. Godinez challenges his sentence based on the fact that he was sentenced as an adult under Colorado's direct filing statute, the claim is denied.

Next, Mr. Godinez argues that being subjected to lifetime registration as a sex offender and the fact that he may never be released from parole constitute constitutional violations.  Under SOLSA, if an inmate is granted parole, he is subject to "an indeterminate term of parole of at least twenty years" for a class 2 felony "and a maximum of the remainder of the sex offender's natural life." Colo. Rev. Stat. § 18-1.3-1006(1)(b).  Once released on parole, the sex offender "must participate in the intensive

17

supervision parole program (ISPP) created by the CDOC . . . ." Colo. Rev. Stat. § 18-1.3-1006(2)(a).  On completion of the mandatory minimum 20 years on parole, SOLSA requires that the parole board schedule a hearing to determine whether the offender may be discharged from parole. Colo. Rev. Stat. § 18-1.3-1006(3)(a).  If not discharged from parole, the parole board shall review the denial once every three years. Colo. Rev. Stat. § 18-1.3-1006(3)(b).  Additionally, any person convicted as an adult of sexual assault under Colo. Rev. Stat. § 18-3-402 is required to register as a sex offender for life. Colo. Rev. Stat. § 16-22-103; § 16-22-113(3)(b).

However, sex offender registration and a lifetime of parole for juveniles do not carry the same constitutional concerns as a lifetime in prison with no meaningful opportunity for parole.  There is no constitutional right for a juvenile offender to be discharged from parole or to not be subject to lifetime sex offender registration.  Mr. Godinez cites no caselaw to the contrary.  *Graham* held that a juvenile offender must have a meaningful opportunity for parole.  Thus, if Mr. Godinez is released to parole, he has no Eighth Amendment claim based on the holding in *Graham*.  Further, the Supreme Court has emphasized the uniqueness of a sentence of life imprisonment without parole. *See Graham*, 560 U.S. at 69–70 ("[L]ife without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable.").  To the extent Mr. Godinez asserts his habeas claim based on sex offender registration or the possibility of a lifetime of parole, his claim is denied.

### 2.  SOLSA Indeterminate Sentencing and Treatment Requirements

The crux of Mr. Godinez's habeas claim is that based on Colorado's indeterminate sentencing scheme applied to sexual offenders, his sentence is equivalent to a life without parole sentence, which violates the Eighth Amendment under *Graham*.  In Colorado, under the SOLSA scheme, sex offenders receive an indeterminate sentence with a minimum term of years (which is based on the sentencing range for the felony level of the offense) and a maximum term of life. *See Vensor v. People,* 151 P.3d 1274, 1276 (Colo. 2007) (discussing Colo. Rev. Stat. § 18–1.3–1004(1)(a)).  "On completion of the minimum period of incarceration specified in the sex offender's indeterminate sentence, less any credits earned by him, [SOLSA] assigns discretion to the parole board to release [a defendant] to an indeterminate term of parole of at least ten years for a class four felony, or twenty years for a class two or three felony, and a maximum of the remainder of the sex offender's natural life. *See id.* (citation omitted); *see also Beylik v. Estep*, 377 F. App'x 808, 2010 WL 1916414, at *3 (10th Cir. May 13, 2010) (unpublished) (the decision to grant parole under SOLSA is "wholly discretionary"); *People v. Oglethorpe*, 87 P.3d 129, 136 (Colo. App. 2003) ("The decision to grant parole or absolute release to an inmate incarcerated for an indeterminate sentence under [SOLSA] is vested within the sound discretion of the state parole board.").  "As part of the [SOLSA], Colorado requires sex offenders to serve the minimum sentence and to progress in treatment until a parole board determines that the offender no longer poses an undue threat to society if treated and monitored appropriately." *Jago v. Ortiz*, 245 Fed. App'x 794, 796 (10th Cir. Aug. 20, 2007) (citing Colo. Rev. Stat. § 18-1.3-1006(1)(a)). Courts have held that participation in an

19

appropriate sex offender treatment program "is an absolute prerequisite for release on parole." *Beebe v. Heil*, 333 F. Supp.2d 1011, 1012 (D. Colo. 2004).  Under CDOC regulations, SOTMP prioritizes offenders for sex offender treatment based on their parole eligibility date.  Offenders who are within four years of their parole eligibility date are given first priority for treatment. *See* CDOC AR 700-19(IV)(E)(1)(a).  If parole is denied, SOLSA requires the board to review its parole decision at least once every three years. *See id*. (citing Colo. Rev. Stat. § 18-1.3-1006(1)(c)).

In addition to the specific statutes applicable to sex offenders, under Colorado's general parole statutes, when deciding whether to grant parole for all offenses, the parole board considers the "totality of the circumstances," including eleven statutory factors. Colo. Rev. Stat.§ 17-22.5-404(4)(a) (2022).  The risk of reoffense is the "central consideration." *Id*. at § 404(1)(a).  The parole board must also consider the offender's institutional conduct, participation in any required treatment, and the "[a]ggravating and mitigating factors from the criminal case." *Id*. at § 404(4)(a).

Applicant argues that based on the mandatory requirements of SOLSA, where the parole board must first determine whether the offender has progressed in sex offender treatment, the initial eligibility for parole consideration is not based on demonstrated maturity and rehabilitation as required by *Graham*.  Basically, he argues that even if he can demonstrate maturity and rehabilitation, but he has not progressed in sex offender treatment, he has no meaningful opportunity for parole.  Mr. Godinez's arguments regarding his sentence under SOLSA can essentially be broken down into two future concerns: (1) what if the CDOC doesn't provide him the required sex offender treatment because of lack of availability or any number of other reasons; and/or (2) what

20

if Mr. Godinez does receive sex offender treatment but he doesn't "successfully progress" in treatment or doesn't meet the discretionary risk assessment.

Applicant's concerns were considered by the state district court in the multi-day post-sentencing evidentiary hearing. On *de novo* review, this Court presumes the state court's factual determinations are correct, and Applicant bears the burden of rebutting such presumption by clear and convincing evidence. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See id.* Further, the state court's interpretation of state law "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Specifically, following the multi-day post-sentencing hearing, the state trial court found that under state law, Mr. Godinez could reach parole eligibility by age by 38. *See* State Court Record, Court File at 964 & 975; *see also* ECF No. 21 at 24. Mr. Godinez does not specifically challenge this calculation. (ECF No. 24 at 3 (stating that the finding that Mr. Godinez could reach parole eligibility by age 38 "may be true.")). The state district court also found that "based on the various life expectancy tables presented . . . the defendant is expected to live to the age of 77.4 years," and even if long incarceration is considered, the court found that "defendant's anticipated life span" was 69.68 years. *See* State Court Record, Court File at 975. Obviously, age 38 is within the life expectancy of Mr. Godinez and is much earlier than other cases where courts have held that longer sentences still complied with the constitutional requirement of *Graham*.

21

*Rainer v. Hansen*, 952 F.3d 1203, 1211 (10th Cir. 2020) (opportunity to reach parole eligibility by ages 60 or 42 satisfied Graham); *United States v. Mathurin*, 868 F.3d 921, 935 (11th Cir. 2017) (same, age 67); *Ira v. Janecka*, 419 P.3d 161, 169 (N.M. 2018) (same, age 62); *Smith*, 892 N.W.2d 52, 64-66 (Neb. 2017) (same, age 62); *South Dakota v. Charles*, 892 N.W.2d 915, 919-21 (S.D. 2017) (same, age 60).

Further, after considering Colorado statutes regarding sex offender sentencing, treatment requirements, and parole procedures, the state trial court concluded that

> the parole board is <u>not</u> restricted in its ability to consider the *Graham* factors under its guidelines or under evidence-based factors, and given the Supreme Court's mandate in *Graham* that such facts <u>must</u> be considers for a juvenile convicted of a sexual offense, the Court must presume that the Parole Board will comply with the Supreme Court's directive.

State Court Record, Court File at 980 (emphasis in original).  Additionally, the state trial court specifically held that it must rely on both the statutory requirement for sex offender treatment and the SOMB standards and guidelines which anticipate that such treatment "can, will and must" be provided to incarcerated sex offenders. (*Id.* at 982).

It is undisputed that the Colorado Parole Board's ability to grant or deny parole under SOLSA is discretionary.  The Tenth Circuit has held that Colorado's discretionary parole system can still comply with *Graham*. *Rainer*, 952 F.3d at 1211 ("In *Graham*, the Court observed that a state was not required to release juvenile offenders; the state needed only to guarantee a meaningful opportunity for release."); *see also Moore v. Warden*, 816 F. App'x 337, 339 (11th Cir. 2020) (state's discretionary parole system does not violate *Graham*).

As to Mr. Godinez's specific arguments regarding his sentence, the Court will first consider his argument that if the CDOC fails to provide him the required sex offender treatment for whatever reason, he will never be eligible for parole.  When sentencing Mr. Godinez, the state trial court was justified in relying on the state statutes and guidelines regarding sex offender treatment.  As discussed above, the state trial court specifically concluded that it must rely on both the statutory requirement for sex offender treatment and the SOMB standards and guidelines which anticipate that such treatment "can, will and must" be provided to incarcerated sex offenders and, therefore, it presumes Mr. Godinez will receive sex offender treatment. *See* State Court Record, Court File at 982.  This Court presumes this state court factual finding is correct, and this Court is bound by the state court interpretation of state law.

Further, it is undisputed that based on the CDOC guidelines and regulations, Mr. Godinez is not yet eligible for sex offender treatment.  The state trial court found that he will first be eligible for parole at age 38, and based on the CDOC administrative regulations, he will receive priority for sex offender treatment four years prior to his parole eligibility date.  Both parties agree that he is not currently eligible to be prioritized for sex offender treatment based on the CDOC regulations.

If for some unknown reason in the future, Mr. Godinez is denied the opportunity to participate in the required sex offender treatment, he could have a potential claim based on *Graham* at that time.  However, the theoretical possibility that Mr. Godinez might – contrary to state statutes and regulations at the time he was sentenced – be denied sex offender treatment in the future does not demonstrate that his sentence is unconstitutional.

23

Additionally, Mr. Godinez is concerned that even if he is granted sex offender treatment but he does not "successfully progress" in treatment or he does not meet the discretionary risk assessment, he will never be granted parole. (ECF No. 24 at 10). However, such concern does not amount to a constitutional violation.  Mr. Godinez apparently wants a guarantee that he will be paroled in his lifetime.  However, a state is not required to guarantee eventual freedom to a juvenile offender. *Graham*, 560 U.S. at 74; *Miller v. Alabama*, 567 U.S. 460, 479, 132 S.Ct. 2455, 2469 (2012).  Instead, the Constitution requires states to offer juveniles convicted of nonhomicide crimes "some meaningful opportunity for release based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75.

As the Supreme Court specifically stated in *Graham*:

> [W]hile the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives. **The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society**.

*Graham*, 560 U.S. at 75 (emphasis added).  Thus, there will be some juvenile offenders who will spend the rest of their lives in prison.  Such a result is not unconstitutional.

Further, if an offender does not progress in sex offender treatment, it is arguably a reflection of the offender's lack of rehabilitation.  Similar to an inmate earning good time credit, progressing in sex offender treatment is within an inmate's own control. *See*

*e.g., United States v. Mathurin*, 868 F.3d 921, 935 (11th Cir. 2017) ("It is true that Defendant may not receive all of the above good-time credit if he misbehaves and thereby forfeits some of that credit. But it is totally within Defendant's own power to shorten the sentence imposed.").  The state has a significant interest in ensuring that sex offenders who are released into the public have progressed in sex offender treatment and will not reoffend. *See* Colo. Rev. Stat. § 18–1.3–1001 ("The general assembly therefore declares that a program under which sex offenders may receive treatment and supervision for the rest of their lives, if necessary, is necessary for the safety, health, and welfare of the state."); *see also McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) ("When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault. States thus have a vital interest in rehabilitating convicted sex offenders. Therapists and correctional officers widely agree that clinical rehabilitative programs can enable sex offenders to manage their impulses and in this way reduce recidivism." (citations omitted)).  The state's interest in inmates progressing in sex offender treatment does not take away a juvenile offender's "meaningful opportunity" for parole; it just means an offender is not guaranteed parole.

Thus, based upon the length of Mr. Godinez's sentence, this Court finds that he has some meaningful opportunity to obtain release on parole during his lifetime. Colorado's sentencing scheme under SOLSA does not deprive him of this meaningful opportunity.

### 3.  Mr. Godinez Argues that Factual Determinations of the State Court Should Not be Presumed Correct

Mr. Godinez argues that "[t]here are few, if any factual determinations by the state court that are subject to the presumption of correctness found in 28 U.S.C. [§] 2254(e)(1)." (ECF No. 24 at 10).  However, Mr. Godinez only specifically challenges one factual determination by the state court.  Mr. Godinez argues that the state court's factual finding that "[based on expert testimony, sex offender] treatment is, in fact, more effective when provided shortly before release, and the age of the defendant does not significantly affect the efficacy of the treatments" is clearly erroneous because "the records is devoid of any evidence to support it." (ECF No. 24 at 10 (citations omitted)).  Although Mr. Godinez fails to provide "clear and convincing evidence" to support his challenge to this state court factual finding, the Court has reviewed the state court record and transcripts from the state evidentiary hearing.  After such review, the Court agrees with Mr. Godinez that there is no evidence to support this factual finding of the state district court and, in fact, there is expert evidence to the contrary.

The state trial court stated, in its written order following the evidentiary hearing on Mr. Godinez's sentence, the following:

> 29. First, defendant asserts that the delay in providing SOMB-approved treatment to any sex offender until four years prior to the offender's parole eligibility date will unnecessarily delay the defendant's parole eligibility date, and that this delay is complicated by the waiting list for treatment of those offenders eligible for treatment.
>
> 30. In response to this argument, defendant's own expert witness, Tom Leversee, testified that (1) SOMB-approved treatment is most effective when provided shortly before the offender's release into the community on parole, and (2) except for the very young, the age at which such treatment is

> provided to the offender is immaterial. That is, once the
> defendant is an adult, the SOMB-approved treatment is just
> as effective if provided later in his sentence than immediately
> upon his DOC incarceration.
>
> 31. Based on this testimony, the Court finds that the DOC's
> practice of deferring SOMB-approved treatment to the last
> four years prior to release on parole does not jeopardize the
> defendant's eligibility for parole or the effectiveness of the
> treatment.

State Court Record, Court File at 982.

This Court's review of the state court record reveals that on February 24, 2014, during the evidentiary hearing on Mr. Godinez's sentence, the state court qualified the defense witness, Mr. Thomas Leversee, as an expert in four areas: (1) juvenile social development and maturity as impacted by research on brain development; (2) juvenile sex offender clinical treatment and recidivism, but not clinical treatment for adults; (3) SOMB policies and procedures and practices for juvenile and adults; and (4) sex offender treatment policies and recidivism literature for juveniles and adults. *See* State Court Record, Transcripts, Evidentiary Hearing 2/24/2014 at page 33. However, after reviewing the transcripts of Mr. Leversee's testimony, the Court cannot find any testimony where he stated or even insinuated that SOMB-approved treatment is most effective when provided shortly before the offender's release into the community on parole. In fact, Mr. Leversee testified multiple times to the contrary. That is, he testified that the best time for an offender to receive treatment is as close to the period in which he offended as possible. *Id.* at 76 (best time for a juvenile to receive treatment as a juvenile sex offender is as close to the period in which he offended as possible); *see also id.*, Evidentiary Hearing, 3/11/2014 at pages 81-82 (same).

Therefore, the Court agrees with Mr. Godinez that the state court record is devoid of any evidence to support the finding that "Tom Leversee, testified that (1) SOMB-approved treatment is most effective when provided shortly before the offender's release into the community on parole."  This finding is clearly contradicted by the record. However, this factual determination does not affect this Court's conclusion that Mr. Godinez's sentence is constitutional under the Eighth Amendment and *Graham*.  As long as Mr. Godinez is provided sex offender treatment so that he has some meaningful opportunity for parole, it is irrelevant under *Graham* whether the treatment occurs when he arrives in prison or if it occurs close to his parole eligibility date.  Mr. Godinez has not articulated any valid constitutional concern regarding the timing of treatment except to argue that it is more effective if it is provided closer to when he offended and that there is no legitimate penological reason for delaying treatment.  These concerns do not rise to a constitutional violation regarding his sentence.  It is undisputed that there are Colorado inmates who progress in sex offender treatment and get released on parole.  Further, operating a prison requires balancing numerous logistical, budget, and safety concerns. The Court is mindful of the primary management role of prison officials, "who should be free from second-guessing or micro-management from the federal courts." *Estate of DiMarco v. Wyo. Dep't of Corrs., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007). Thus, the specific state court factual finding that is contested by Mr. Godinez is irrelevant to the Court's determination of whether his sentence is constitutional under the Eighth Amendment.

#### 4.  State Court's Interpretation of State Law

Mr. Godinez also argues that the state trial court's interpretation of Colorado's parole statutes should not be binding on this Court.  The state trial court specifically interpreted Colorado's parole statutes – both the general and sex offender specific statutes – and concluded that the state parole board can and will consider a juvenile offender's maturity and rehabilitation. *See* State Court Record, Court File at 980 ("Therefore, the Parole Board is not restricted in its ability to consider the *Graham* factors under its guidelines or under evidence-based factors, and given the Supreme Court's mandate in *Graham* that such factors must be considered for a juvenile convicted of a sexual offense, the Court must presume that the Parole Board will comply with the Supreme Court's directive.").  Respondents argue that this state court interpretation of state law is binding.  (ECF No. 21 at 32).

Applicant argues that that there are three problems with Respondents' argument.  First, Applicant argues that the state appellate courts failed to interpret any of the relevant state statutes and precedent applicable to the issue presented and thus, "the state post-conviction court's legal conclusions … are … not worthy of any biding effect." (ECF No. 24 at 8).  The Court is not persuaded by this argument.  Although the Colorado appellate courts in this case did not interpret any of the relevant state statutes, the state trial court did interpret them, and this federal court is bound by its interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam).  Applicant provides no caselaw to the contrary.

Second, Applicant argues that the conclusion "'that the state parole board can and will consider maturity and rehabilitation' is contrary to the plain language of § 18-

1.3-1006(1)(a) and, therefore, clearly incorrect." (ECF No. 24 at 8).  However, the plain language of § 18-1.3-1006(1)(a) states:

> On completion of the minimum period of incarceration specified in a sex offender's indeterminate sentence, less any earned time credited to the sex offender pursuant to section 17-22.5-405, C.R.S., the parole board shall schedule a hearing to determine whether the sex offender may be released on parole. In determining whether to release the sex offender on parole, the parole board shall determine whether the sex offender has successfully progressed in treatment and would not pose an undue threat to the community if released under appropriate treatment and monitoring requirements and whether there is a strong and reasonable probability that the person will not thereafter violate the law. The department shall make recommendations to the parole board concerning whether the sex offender should be released on parole and the level of treatment and monitoring that should be imposed as a condition of parole. The recommendation shall be based on the criteria established by the management board pursuant to section 18-1.3-1009.

Colo. Rev. Stat. § 18-1.3-1006(1)(a).

Despite Applicant's argument, nowhere in the statute does it plainly state that maturity and rehabilitation will not be considered by the parole board.  Further, the "plain language" of the statute simply states that the parole board "shall determine" whether: (1) the inmate has progressed in sex offender treatment; (2) would not pose an undue threat to the community if released; and (3) whether there is a strong and reasonable probability that the person will not break the law in the future.  This language gives the parole board guidance as to what they must consider but it does not stipulate what its decision should be nor does not it prevent the parole board from considering other factors, such as those outlined in Colorado's general parole statutes and the factors

mandated by the Supreme Court in *Graham*.  As the state trial court stated when

considering this argument:

> [T]he statute does not restrict the Parole Board's
> consideration to these factors, and is silent as to the Board's
> ability to consider other factors.
>
> > Where a statute is silent on a certain matter
> > and that silence prevents a reasonable
> > application of the statute, we must endeavor to
> > interpret and apply the statute despite the
> > silence all the while striving to "effectuate the
> > General Assembly's intent and the beneficial
> > purpose of the legislative measure."  If
> > however, a statute can be construed and
> > applied as written, the legislature's silence on
> > collateral matters is not this court's concerns.
>
> *In re 2000-2021 Dist. Grand Jury*, 97 P.3d 921 924 (Colo.
> 2004).
>
> []Since the legislature provides addition[al] guidance
> regarding factors which the Parole Board may consider in
> determining parole eligibility, the Court finds that the silence
> in § 18-1.3-1006(1)(a) about considering other factors will
> not prevent this Court from interpreting and applying those
> other factors.

State Court Record, Court File at 979.  Thus, this Court is bound by the state court's

determination that under Colorado's parole scheme, the state parole board can and will

consider maturity and rehabilitation.

Third, Applicant argues that caselaw, including the cases of *Manaois* and *Kean,*

make it clear that sentencing and parole eligibility under SOLSA must be assessed

independently from the general sentencing and parole statutes.  As the Colorado

Supreme Court stated in *Manaois*:

> [O]ur review of SOLSA leads us to conclude that it was
> never intended to merely supplement the general sentencing

> statutes.  Rather, although it expressly and impliedly
> incorporates certain elements of the general sentencing
> statutes, it is nonetheless an entirely freestanding
> sentencing framework designed to address sex-offense-
> specific objectives.  The differences that flow from those
> distinct objectives undergird SOLSA's unique architecture.

*People v. Manaois*, 488 P.3d 1099, 1111 (Colo. 2021) (footnote omitted).  In *Manaois*,

the Colorado Supreme Court found that SOLSA required indeterminate prison

sentences for felonies that qualify as sex offenses and that inmates were required to

progress in sex offender treatment before being paroled, while the general Colorado

sentencing statutes called for determinate prison sentences. *Id.* at 1109-1111.

However, the *Manaois* Court emphasized:

> [W]e wish to make a collateral point clear: We're not
> suggesting that whenever a sentence is imposed pursuant to
> SOLSA, the general sentencing statutes become irrelevant.
> As we explained earlier, SOLSA explicitly and implicitly
> incorporates certain elements of the general sentencing
> statutes.

*Id.* at 1114.  In *Kean*, the Colorado Supreme Court held that a defendant can be

sentenced "in a multi-count case to prison for a non-sex offense followed by Sex

Offender Intensive Supervision Probation ("SOISP") for another offense – regardless of

whether the latter is a 'sex offense' requiring an indeterminate sentence or a 'sex-

related offense' requiring a determinate sentence." *People v. Kean*, 488 P.3d 1127

(Colo. 2021).  However, similar to the court in *Manaois*, the *Kean* Court never held that

Colorado's general parole statutes were completely inapplicable for SOLSA sentences.

Thus, the Court is not persuaded by Mr. Godinez's argument that *Manaois* and *Kean*

demonstrate that the state trial court's conclusion that the state parole board can and

will consider maturity and rehabilitation is not binding on this Court.  Mr. Godinez has

not demonstrated that there is anything in the SOLSA sentencing scheme that prevents

the parole board from assessing an inmate's maturity and rehabilitation or that such

consideration would conflict with a provision in SOLSA. *See People v. Manaois*, 488

P.3d 1099, 1114 ("[B]ecause SOLSA is more specific than the general sentencing

statutes, where a provision in the general sentencing statutes seems to conflict with a

provision in SOLSA, the former must yield to the latter.").  As such, this Court is bound

by the state court's conclusion that the parole board can and will consider a juvenile

offender's maturity and rehabilitation when considering if the inmate should be paroled.

### C.  Additional Discovery

Finally, the Court will further explain why additional discovery, as requested by

Mr. Godinez, is not necessary for resolution of this habeas action.  Applicant requests

additional discovery so that he can determine the current status of Colorado's sex

offender treatment program including waitlists and other issues that might affect

availability of treatment, as well as the current statistics regarding parole of sex

offenders.  Specifically, Mr. Godinez states that:

> Seven years have passed since [he] presented his Eight [sic]
> Amendment claim in the state trial court.  In the interim,
> there have been some changes in the administration of
> CDOC's parole system under the SOLSA. *See, e.g., Tillery,*
> *supra* at *1-3 (noting that a November 2016 audit by the
> Colorado Office of the State Auditor raised the concern of
> "offenders with lifetime supervision sentences remaining in
> prison indefinitely … because they cannot be released until
> they are treated" and that in January 2017, CDOC
> implemented a new "track system," which takes into account
> the level of risk when determining what treatment an
> offender will receive." [sic] *Id.* at *2; *see also* AR 700-19
> (revised effective 12/01/19).  Nevertheless, major
> operational problems still exist with the CDOC's SOTMP
> program nevertheless [sic].  These include, inter alia, lengthy

> waitlists and delays, inadequate space, staffing and financial
> resources, and insufficient capacity to proved [sic] treatment
> to all those eligible to receive it. *Tillery, supra* at *2-3.
>
> Given the passage of time and changes in CDOC policies,
> there may be unresolved factual issues regarding whether
> Godinez's sentence is indeed a *de facto* life sentence and
> whether the scheme under which he was sentenced denies
> him a meaningful and realistic opportunity for release based
> on demonstrated maturity and rehabilitation.

(ECF No. 1 at 26).  Although the Court is cognizant that the issue presented by Mr.

Godinez is "a complex issue" of "first impression," additional discovery is not warranted

to assess his current habeas claim. *But see Thomas v. Stitt*, No. 21-6011, 2022 WL

289661, at *4 (10th Cir. Feb. 1, 2022) (remanding for further development of § 1983

claim when inmate argued Oklahoma's statute governing parole consideration was

unconstitutional as applied to juvenile homicide offenders sentenced to life because it

failed to provide a meaningful opportunity to obtain release based on demonstrated

maturity and rehabilitation).

 First, as all the parties agree, Mr. Godinez is not currently eligible for parole.

Further, under the CDOC guidelines, he is not currently eligible for sex offender

treatment because he is not within four years of his parole eligibility date.  Thus, there is

no need for the Court to consider the statistics related to the sex offender treatment

program at this time.  At the time he was sentenced, the district court held an

evidentiary hearing and considered such information.  If the information and statistics

regarding the number of sex offenders receiving treatment or the number of sex

offenders that have been granted parole has now changed significantly – many years

after Mr. Godinez was sentenced – there is nothing to say that the statistics will not

change again when Mr. Godinez is actually eligible to participate in treatment and/ or eligible for parole.

Additionally, although this Court has determined that the sentence imposed on Mr. Godinez by the trial court did not violate his constitutional rights under *Graham*, it does not foreclose him from raising potential constitutional claims in the future.  If, at the time Mr. Godinez is eligible for treatment and/or eligible for parole, the state actors or state system deprive him of a meaningful opportunity for parole, he could potentially have a constitutional claim pursuant to *Graham* at that time. *See e.g., Rainer v. Hansen*, 952 F.3d 1203, 1210 n.7 (10th Cir. 2020) (noting that "[s]ubsequent data on the administration of JCAP [the state's specialized parole program for juvenile offenders] could affect how [the court] assess[es] its creation of opportunities for early release based on demonstrated maturity and rehabilitation.").

Many federal district courts have noted that constitutional issues addressed in *Graham* are often relevant after sentencing. *See Greiman v. Hodges*, 79 F. Supp. 3d 933, 943 (S.D. Iowa 2015) ("The Court disagrees with Defendants that *Graham* has no applicability outside the context of a juvenile's initial sentencing").  For example, in *Greiman*, the Court noted that "the responsibility for ensuring that Plaintiff receives his constitutionally mandated 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation' lies squarely with [the parole board]." *Id.*  "It is axiomatic that a juvenile offender could only prove increased maturity and rehabilitation warranting release from custody at some time well after a sentence is imposed." *Id.* (citing *Graham*, 560 U.S. at 79 (stating that the Eighth Amendment does not permit a State to deny a juvenile offender the chance "to *later demonstrate* that he is fit to *rejoin*

35

society based solely on a nonhomicide crime that he committed while he was a child in the eyes of the law")).  Thus, the *Greiman* court determined that the plaintiff's allegations "state[d] a plausible § 1983 claim that [state actors, including the state parole board,] have wrongfully deprived and continue to deprive Plaintiff of a 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,' thereby violating his right to be free from cruel and unusual punishment under the Federal and State Constitutions." *Id.* at 944.  The court pointed to allegations that the parole board's "'current policies ... fail to take into account ... youth at the time of [the] offense and ... demonstrated maturity and development.'" *Id.* (citation omitted). In addition, the court determined that plaintiff presented a plausible § 1983 claim based on allegations that the "policy on participating in sex offender treatment categorically excludes Plaintiff from participation because he does not have a defined discharge date," that sex offender treatment is required as a condition of parole eligibility, and that "Plaintiff is, in effect, denied not just of a meaningful opportunity for parole; he is denied *any* opportunity for parole." *Id.* at 944 (emphasis in original).  Based on these allegations, the *Greiman* court held that Plaintiff's allegations "presented at least a plausible § 1983 claim that Defendants' policy ... results in a *de facto* life without parole sentence that is prohibited by *Graham* and its progeny." *Id.*; *see also Hayden v. Keller*, 134 F. Supp. 3d 1000 (E.D.N.C. 2015) (a juvenile nonhomicide offender sentenced to life with parole brought a § 1983 action alleging that the North Carolina Parole Commission ("NCPC") failed to provide him with a meaningful opportunity for release).

Thus, if the Colorado parole board or other state actors fail to allow Mr. Godinez a meaningful opportunity for parole or fail to consider his youth and rehabilitation, he

36

could potentially pursue a § 1983 claim against them when such a claim is ripe. *See Kitchen v. Whitmer*, 486 F. Supp. 3d 1114, 1131 (E.D. Mich. 2020) (holding that Applicant's claims that the parole board does not adequately consider youth in deciding whether to grant parole and is biased against juvenile offenders are not yet ripe.  Article III of the Constitution thus precludes this Court from considering those challenges now); *Maryland Restorative Just. Initiative v. Hogan*, No. CV ELH-16-1021, 2017 WL 467731, at *14–15 (D. Md. Feb. 3, 2017) (Plaintiffs may assert claims pursuant to § 1983 that Maryland's system of parole does not provide them with a realistic and meaningful opportunity for release, in violation of the Eighth Amendment).  Similarly, if the CDOC fails to allow Mr. Godinez to participate in sex offender treatment for an inordinately long period of time after he is eligible, and he is, therefore, unable to have a meaningful opportunity for parole, he has a potential constitutional claim at that time.  Thus, although additional discovery is not warranted at this time, Mr. Godinez could potentially have constitutional *Graham* claims in the future, which might require additional discovery.

## IV.  CONCLUSION

In conclusion, under *Graham v. Florida*, the State of Colorado must provide Mr. Godinez with a meaningful opportunity for release based on demonstrated maturity and rehabilitation.  The Court concludes that Applicant has a meaningful opportunity to obtain release on parole well within his life expectancy. *See Jan. v. Lengerich*, No. 20-CV-02791-CMA, 2021 WL 5957407, at *7 (D. Colo. Dec. 16, 2021) ("The record before the Court shows that Applicant has opportunities to obtain release on parole well within

his life expectancy.").  Therefore, Mr. Godinez fails to demonstrate that his sentence was unconstitutional.  His habeas application will be denied.

## V.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court must grant or deny a certificate of appealability when it enters a final order adverse to the Applicant.  A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right and the Court "indicates which specific issue or issues satisfy [that] showing." 28 U.S.C. § 2253(c)(2)-(3).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034, 154 L. Ed. 2d 931 (2003) (citation omitted).  Applying this standard to the Application, the Court concludes a certificate of appealability should be granted for Applicant's argument that based on Colorado's indeterminate sentencing scheme applied to sexual offenders, he has no meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation, which violates the Eighth Amendment under *Graham*.

## VI.  ORDERS

Based on the above findings, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is DENIED and this action is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that Applicant's Motion for Discovery and to Expand the Record (ECF No. 27) is DENIED.  It is

FURTHER ORDERED that a certificate of appealability will issue because Applicant has made a substantial showing of the denial of a constitutional right.

DATED at Denver, Colorado, May 24, 2022.

BY THE COURT:

_____

R. Brooke Jackson
Senior United States District Judge

39